UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- x

UNITED STATES OF AMERICA,

                                             05 CR. 673 (LAP)
          -against-

ABDULRAHMAN FARHANE,

                             Defendant.

-------------------------------------- x

**MEMORANDUM OF LAW IN AID OF**
**SENTENCING FOR DEFENDANT**
**ABDERRAHMAN FARHANE**

<u>**PRELIMINARY STATEMENT**</u>

        Defendant, defendant Abderraham Farhane a/k/a Abdulrahman Farhane, places before the Court the following issues relating to his appropriate sentence, pursuant to Fed. R. Crim. P. § 32(c)(1).

        On November 9, 2006, defendant pleaded guilty to a two count superceding information before the Honorable Loretta A. Preska which charged (1) that in the Southern District and elsewhere from approximately November 2001 through and including on or about June 2005, defendant, together with others, conspired to assist another in transferring money from the United States to a place outside the United States, in violation of 18 U.S.C. § 1956(a)(2)(A); and (2) that in the Southern District and elsewhere on June 9, 2005, in response to questions from the Federal Bureau of Investigations, defendant gave false responses concerning a domestic and international terrorist investigation.

Pursuant to the Plea Agreement, defendant agrees not to appeal or otherwise challenge his conviction in the event the Court imposes a term of imprisonment of 156 months or below. See Plea Agreement.

Defendant is scheduled to be sentenced on April 10, 2007 at 3:00 p.m. However, defense counsel has notified the government that because of the closeness of this submission to the sentencing date, that defendant will consent to any necessary adjournment to give the government an opportunity to reply.

**SENTENCING ISSUES**

A.   **Sentencing Issues**

At his sentencing defendant Mr. Farhane will respectfully raise the following matters relating to his sentencing:

1.   In accord with the stipulated guideline range, the parties agree that a sentence of 156 months would be a reasonable sentence pursuant to the factors set forth in 18 U.S.C. § 3553(a). See Plea Agreement. However, pursuant to the Plea Agreement, either party may seek a sentence outside the stipulated guideline range, and suggest that the Court *sua sponte* consider a sentence outside of the stipulated guideline range, based upon the factors to be considered in imposing a sentence pursuant to 18 U.S.C. § 3553(a). See Plea Agreement.

**B.     Presentence Report**

Defendant respectfully requests that the Court adopt the following findings and recommendations of the United States Probation Office listed in its PSR:

1. That the Court not fine defendant. PSR at p. 32.

2. That defendant reportedly suffers from numerous health conditions for which he is currently being medicated, namely arthritis in his arms and legs, headaches, high cholesterol and hypertension, and [probation] recommends that he receive appropriate medical care and be administered any necessary medications while he serves his sentence. PSR at p. 29.

3. That the probation department takes no position on whether Mr. Farhane's "atypical confinement conditions," whereby he is being held in solitary confinement solely due to the nature of the charges and not because of any action or violation by him, is a mitigating factor. PSR at p. 29.

4. That defendant reportedly suffers from anxiety and depression due to his incarceration, for which he receives medication, and [probation] recommends that he receive appropriate mental health treatment while he serves his sentence. PSR at p. 30

Defendant respectfully requests that the Court reject the following findings and recommendations of the United States Probation Office listed in its PSR:

1. Defendant objects to ¶¶ 3 and 22 of the PSR, insofar as the PSR asserts that defendant discussed sending equipment.

2. Defendant objects to ¶ 13 of the PSR insofar that it gives the impression that Mr. Fahane sought out the informant.

3. Defendant objects to ¶ 15 of the PSR as stated above insofar he recalls that the agents told him about the consequences of lying to them only after the interview.

4. In addition, with respect to ¶¶ 15-17 of the PSR, defendant states that he is a native Arabic speaker with a functional knowledge of English, which did not allow him to understand all the questions posed by the agents.

5. Defendant objects to ¶¶ 31 and 87 of the PSR because although defendant was indicted under 18 U.S.C. 2339A, he pled guilty to an information alleging money laundering and making false statements to federal agents, accordingly defendant's total offense level should be no more than 39 as stated in the parties' plea agreement.

6. Defendant objects to ¶ 45 of the PSR, which includes conduct unrelated to his proper sentence, the conduct of others, or facts defendant did not plead or stipulate to in his plea agreement or at his allocution, namely defendant's open case in the Western District of Tennessee involving his alleged involvement in a "sham" marriage between defendant's brother-in-law and another person.

7. Defendant objects, pursuant to <u>United States v. Booker</u>, 543 U.S. 220 (2005), to facts defendant did not plead or stipulate to in his plea agreement or at his allocution.

8. In addition, defendant objects to Probation's recommendation that he be sentenced to consecutive sentences, totaling 156 months of incarceration, and submits that a sentence of less than 156 months is appropriate.

C. **Defendant's History and Characteristics**

Mr. Farhane is the devoted husband of Malika Ramiza, and father of Asmaa (age 25), Mohamed (age 23), Yousef (age 19), Elkhansaa (age 15), Asiyah (age 7), and Ibrahim (age 4).  <u>See</u> PSR at ¶ 50.  The adverse affect of defendant's arrest and conviction on his family is a factor in determining an appropriate sentence in this case, and I have attached to this submission letters from defendant, letters from his family and friends, a petition on his

4

behalf, and family photographs.  See attached documents under Exhibits 1 (documents) and 2 (photographs).

Mr. Farhane his a 52 year-old naturalized United States citizen who has lived in Brooklyn, New York for over 20 years.  PSR at ¶¶ 52-53; and letter from Mr. Farhane to the Court, dated October 9, 2006.  He has been married for over 25 years to Malika Ramiza who is also a naturalized United States citizen. PSR at ¶¶ 50, 54; and letters from Mr. Farhane and Malika Ramiza at Exhibit 1.  He was a bookstore owner, and until this case had no criminal history.

As noted above, Mr. Farhane has six children.  Ibrahim is the youngest.  He is a four-year old native of the United States.  Asiyah is seven-years old.  She is also a native born United States citizen.  She attends an Islamic School in Brooklyn, which the family has struggled to continue sending her to since her father's arrest.  She is good student and she and her brother are attempting to cope with their feelings of loss concerning their father's arrest.  With help from their family, Asiyah has written to her father and the court letters expressing her feelings, which are attached under Exhibit 1.  Asiyah states "all [of her] family feels sad [and] nobody can concentrate[,]" "we are not happy because we wish you hope," "I love you Dad", and "I sp[eak] and dream about you Dad."  See Exhibit 1.

Elkhansaa is the third youngest child.  She is 15-years old and a naturalized United States citizen.  She graduated from an Islamic school as valedictorian, and now attends Brooklyn

5

Technical High School, where she is an honor student.  She has participated in New York University's STEP Program, and has fought to keep her mind to her studies despite her loss.  She has also expressed her thoughts in a letter to the Court, where she states, "When the officers came to take my father they acted as if the[y] were his friends[,] and when [we] asked what was going on one of them said, 'The subject has children.'"  Exhibit 1 (11/30/06 Letter from Elkansaa Farhane).  That moment was transformative.  Her father went from "the only person that thought I could do anything I set my mind to" to something less.  She could not cry and thought that there was something wrong with her, and when her teachers asked her if there was anything wrong, she denied her feelings.  Still, showing remarkable resilience, Elkhansaa has sought to learn from this tragic experience, stating in her letter, "What makes a great person who is satisfied and happy with their lives is adversity and experiences that rock their lives."  Id.

     Youssef is the third oldest child.  He is 19-years old and a naturalized United States citizen.  He graduated from Telecommunications High School in Brooklyn, and studies architecture at New York City College of Technology in Brooklyn, while managing his father's book store to help support his mother and younger siblings.  PSR at ¶ 51.  Youssef has also written his thoughts to the Court, and describes his father as a man who has cared for and sacrificed to for his family.  See Exhibit 1 (Letter from Youssef Farhane).

6

Mohammed Farhane is the second oldest child.  He is a 23-year old naturalized United States citizen.  He graduated from New Ridge Technical High School and Saint Francis College.  He had hoped to join the New York City Police Department after he graduated from college.  In 2005 and 2006, he passed the NYPD's exams and was told that he would hear from the NYPD to report for hiring, but he did not hear back from the NYPD he finally sought out his recruiter and was told that his father's case was preventing him from being hired.  See Exhibit 1 (Letter from Mohammed Farhane).

Mohammed has also written the Court, expressing his thoughts and feelings about his father's case.  He has accepted the fact that his father made "mistakes in his judgment" for which he must accept responsibility, but now asks the Court for balance in sentencing his father.  Id.

Finally there is Assma, who is the eldest child.  She is married, and has a four-year old daughter.  Her husband is not living with her, and she and her daughter now reside with her family in Brooklyn.  She is a full-time college student, studying physical therapy.  She has also been employed as a teacher.  She graduated from International High School and now helps her mother raising her younger siblings.

D.  **Defendant's Physical And Mental Condition**

As stated in the PSR at ¶¶ 60-64, and pp. 29, 30, Mr. Farhane suffers from numerous health conditions for which he is currently being medicated, namely arthritis in his arms and legs,

headaches, high cholesterol and hypertension.  He also suffers from anxiety and depression due to his incarceration, for which he receives medication.  Defendant contends that his being kept in solitary confinement represents an "atypical confinement condition" which has contributed to his state of depression and anxiety.

**E.   The Offense**

With respect to the instant offense, Mr. Farhane is best characterized as an individual who was approached by a government informant in late 2001 who sought his assistance to transfer money overseas to Mujahadeen.  He is also an individual who agreed to assist the informant, but who never transferred any money.  Finally, he is an individual then made false statements to federal agents concerning his meeting with the informant and another individual.  See PSR at ¶¶ 8-18.

Defendant objects to ¶¶ 3 and 22, insofar as the PSR asserts that defendant discussed sending equipment.  An objective reading of the transcripts of the consensually monitored conversations shows that Mr. Farhane discussed transferring money overseas, not equipment.  Defendant objects to ¶ 13 of the PSR insofar that it gives the impression that Mr. Fahane sought out the informant to discuss these issues.  Defendant's review of the discovery shows that the informant initiated these conversations.

Defendant objects to ¶ 15 of the PSR insofar he recalls that the agents told him about the consequences of lying to them only after the interview.  In addition, with respect to

¶¶ 15-17 of the PSR, defendant states that he is a native Arabic speaker with a functional knowledge of English, which did not allow him to understand all the questions posed by the agents. Defendant acknowledges that this does not absolve him of his actions but gives the Court a fuller understanding of the circumstances of the crime.

Defendant objects to ¶¶ 31 and 87 of the PSR because although defendant was indictment under 18 U.S.C. 2339A, he pled guilty to an information alleging money laundering and making false statements to federal agents, accordingly defendant's total offense level should be no more than 39 as stated in the parties' plea agreement.  See Plea Agreement.  It should be emphasized that that the government agreed to this provision because Mr. Farhane did not complete all of the acts the conspirators believed necessary for successful completion of the substantive offense, namely transferring any money overseas.

Mr. Farhane embarked on his present course of conduct, which led to his arrest in this matter because "he felt conflicted as both a Muslim and an American when asked for help in supporting Mujahadeen."  PSR at ¶ 26.  In concluding this chapter of his life, Mr. Farhane has shown extraordinary acceptance of responsibility, and intends on returning to his role as husband, father and grandfather.  See PSR at ¶¶ 23-26.

**F.    18 U.S.C. § 3553(a) Factors**

Defendant respectfully submits that he should be sentenced outside the stipulated guideline range, based upon his

specific characteristics, namely: (1) his family circumstances and ties, (2) that defendant has essentially led a law abiding life and is unlikely to commit further offenses, (3) his medical condition, age, and the atypical conditions of his confinement, (4) the cumulative effect of sentencing enhancements, and (5) to avoid sentencing disparity with similarly situated defendants. Under this totality, a period of incarceration within the stipulated guideline range is not needed "to reflect the seriousness of the offense, to promote respect for the law[,]" "to afford adequate deterrence to criminal activity[,]" or "to protect the public from further crimes of the defendant." <u>See e.g.</u> 18 U.S.C. § 3553(a)(2)(A)-(C). Rather, sentencing in this case should focus on the need "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

Indeed, although defendant is not suggesting or requesting a departure, as agreed to in the parties' Plea Agreement, the Policy Statement of U.S.S.G. § 5K2.0 provides a formula for considering what is relevant in constructing a reasonable sentence pursuant to 18 U.S.C. § 3553, stating:

> [a]n offender characteristic or other circumstance that in the Commission's view, "not ordinarily relevant" in determining whether a sentence should be outside the applicable guideline range may be relevant to this determination if such characteristic or circumstance is present to an unusual degree

>     and distinguishes the case from
>     the "heartland" cases covered by
>     the guidelines in a way that is
>     important to statutory purposes
>     of sentencing.

In United States v. Broderson, 67 F.3d 452 (2d Cir. 1995), the Second Circuit explained that pursuant to U.S.S.G. § 5K2.0, even in cases in which no single mitigating circumstance is, itself, sufficient to warrant an adjustment, the district court has the authority to construct a sentence based on a combination of such circumstances. See also United States v. Rioux, 97 F.3d 648, 663 (2d Cir. 1996) (upholding district court's conclusion that, in combination, defendant's medical condition and charitable and civic good deeds warranted downward departure); United States v. McGee, 802 F. Supp. 843 (E.D.N.Y. 1992) (substantial downward departure to avoid imprisonment was justified for a defendant who pled guilty to importing 244.1 grams of heroin, where the defendant was a productive member of work force, continued to educate herself, incarceration would damage defendant's nephew, and defendant's contrition was exceptional).

First, Mr. Farhane's exceptional family circumstances and ties as detailed above are a factor justifying a sentence outside the stipulated guideline range. See e.g. United States v. Galante, 111 F.3d 1029, 1035 (2d Cir. 1997) ("the families of defendants are the intended beneficiaries of downward departure on the ground of extraordinary circumstances relating to family responsibilities"); United States v. Johnson, 964 F.2d 124, 129

(2d Cir. 1992) (the potential for imprisonment to effect the destruction of an otherwise strong family unit can be a basis for a judge's discretionary departure from the range set forth in the guidelines); and United States v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1991) (same).

Second, although the participants admittedly discussed supplying money for weapons, the nature of the instant offense was essentially non-violent.  Defendant does not present an actual danger to the community.  This is supported by the fact that the government did not arrest defendant until almost four years after the offense, while it continued to monitor him.  Furthermore, the participants lacked the sophistication to avoid detection.  Moreover, the Court should take into account the fact Mr. Farhane essentially "led a law abiding life until encountering the government's sting operation and no real criminal would have done business with him."  See United States v. Bala, 236 F.3d 87, 92 (2d Cir. 2000) (the government's "aggressive encouragement of wrongdoing" may considered in sentencing departure).  Indeed, under U.S.S.G. § 4A1.3, the likelihood defendant will commit further offenses is an issue the Sentencing Commission views as important, and the staggering prison exposure for this criminal act in and of itself is highly likely to deter any further attempts by Mr. Farhane.

Third, as detailed above, Mr. Farhane suffers from numerous physical and mental ailments for which he is currently being treated.  Accordingly, the Probation Department has

recommended that he continue to receive medical treatment for these illnesses, and so defendant asks that the Court to take into account his physical condition is deciding upon his proper sentence. See United States v. Rioux, 97 F.3d at 663 (2d Cir. 1996) (upholding district court's conclusion that, in combination, defendant's medical condition and charitable and civic good deeds warranted downward departure). See also U.S.S.G. § 5H1.1 (Age Police Statement) (defendant's age while not ordinarily relevant may be taken into consideration in limited situations if defendant is also infirm). Moreover, defendant submits that his continued incarceration in solitary confinement has and will continue to adversely affect his mental and physical state because the Bureau of Prisons is likely to keep Mr. Farhane in solitary confinement while incarcerated, and, accordingly, this fact should also be considered. Bell v. Wolfish, 441 U.S. 520 (1979) (concerning confinement conditions).

Fourth, defendant submits that the cumulative affect of the application of U.S.S.G. § 3A1.4(a), which raised Mr. Farhane's base offense levels by 12 points from 30 to 42, and 14 to 26 for his respective offenses, and U.S.S.G. § 3A1.4(b), which raised his criminal history computation from I to VI, and U.S.S.G. § 2X1.1(d)(1)(A), which denies him the benefit of a three level decrease for not completing the offense, has resulted in an aggregation of such enhancements not adequately considered by the Sentencing Commission. See United States v. Lauersen, 362 F.3d 160, 163, 164 (2d Cir. 2004) ("when the addition of

substantially overlapping enhancements results in a significant increase in the sentencing range minimum (as it does at the higher end of the sentencing table), a departure may be considered").  Accordingly, this factor may also be considered in constructing defendant's proper sentence.

Finally, Mr. Farhane refers the Court to the case of David Hicks, the Australian who was sentenced to seven years after pleading guilty to having been an Al Qaeda trainee, who armed with an AK-47 was prepared to fight Americans in the Afghanistan conflict in 2001.  See attached New York Times Article, dated March 30, 2007, and MSNBC Article, dated March 30, 2006.  After United States v. Booker, 543 U.S. at 220, sentencing court's must consider all of the factors set forth in 18 U.S.C. § 3553(a), which include "the need to avoid unwarranted sentencing disparities among defendants with similar conduct." 18 U.S.C. § 3553(a)(6).  Thus, sentencing disparities are now properly considered by sentencing courts in their exercise of sentencing discretion.  See United States v. Florez, 447 F.3d 145, 157 (2d Cir. 2006).  Simply put, it would be disproportionate for the Court to sentence Mr. Farhane (who discussed transferring money overseas and lied about the fact) to a term of imprisonment greater than Mr. Hicks, a "confessed Taliban-allied gunman," who left his native Australia to wage Jihad against the United States and its allies in Afghanistan.

Accordingly, Mr. Farhane requests that the Court consider his particular characteristics in constructing his

proper sentence, including sentencing him to concurrent sentences, and asks that the Court sentence him below the stipulated guideline range, so that he can be in position to provide support for his family at the soonest date possible.

**G.   Conclusion**

Finally, Mr. Farhane requests that the Court recommend, pursuant to 18 U.S.C. § 3582(a), that the United States Bureau of Prisons designates him to be housed near the New York City Metropolitan area, that he enter an educational program, and be tested for vocational skills.

Defendant respectfully reserves the right to raise additional issues, if necessary, at the time of sentencing.

Dated:     New York, New York
           April 6, 2007

                                    MICHAEL OLIVER HUESTON, ESQ.
                                    *Attorney for Defendant*
                                    350 Fifth Avenue, Suite 4810
                                    New York, New York 10118
                                    (212) 643-2900

                                    By:

                                    _____
                                    MICHAEL OLIVER HUESTON (MH 0931)