UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                        Plaintiff,<br>    -against-<br><br>ABDERRAHMANE FARHANE,<br><br>                        Defendant. | No. 05-CR-673(LAP) |
| ABDERRAHMANE FARHANE,<br><br>                        Petitioner<br> -against-<br><br>UNITED STATES OF AMERICA,<br><br>                        Respondent. | No. 18-CV-11973 (LAP)<br><br><br><br>MEMORANDUM & ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Petitioner Abderrahmane Farhane's ("Petitioner") motion for an order concerning the scope of the waiver of attorney-client privilege in the above-captioned action. (Dkt. no. 289 [the "Waiver Motion" or "Pet. Waiver Mot."].)[1] Petitioner asks that the scope of waiver extend only to "communications with trial counsel (or lack thereof) concerning the potential denaturalization or deportation consequences of his plea[.]" (Pet. Waiver Mot. at 1.)[2]  Petitioner also requests a protective order limiting the waiver of privilege in various ways.

---

[1] (See also Pet. Waiver Mem., dated Mar 14, 2025 [dkt. no. 290]; Pet. Waiver Reply, dated May 30, 2025 [dkt. no. 294].)  Unless otherwise stated, citations are to docket numbers in 05-CR-673.
[2] All citations to page numbers cited herein are to ECF pages.

(Id.)   The Government opposes the Waiver Motion and requests the Court broaden the scope of attorney-client privilege waiver.  (Gov. Opp'n, dated May 2, 2025 [dkt. no. 293] at 7.)   The Government also opposes Petitioner's request for a protective order.  (Id. at 9-11.)   For the reasons set forth below, Petitioner's Motion is GRANTED in part and DENIED in part.

## I.    Procedural History

Petitioner is a naturalized citizen of the United States and was granted citizenship in April 2002.  (See dkt. no. 232 [the "Affidavit" OR "Farhane Aff."] ¶¶ 7, 15.)   In 2005 and 2006, he was arrested and indicted on multiple charges including conspiracy to provide material support for terrorism.  (Dkt. nos. 1, 21.) The conduct underlying this charge occurred, at least in part, before Petitioner's naturalization.  (Dkt. no. 21 at 4.)

Michael Hueston acted as trial counsel for Petitioner in the criminal proceedings in connection with these charges and was aware that Petitioner was a naturalized citizen.  (See Tr. of Detention Hr'g at 17:24-25 (Nov. 2, 2005).)   Mr. Hueston negotiated a plea on behalf of Petitioner, and Petitioner accepted this plea based on counsel's advice.   (See Farhane Aff. ¶¶ 30-31; see also dkt. nos. 85, 86.)  According to Petitioner, Mr. Hueston did not discuss with  Petitioner  that  denaturalization  and  deportation  were possible consequences of his plea or otherwise advise him as to those risks.  (Farhane Aff. ¶¶ 32-33, 35-36.)

2

Petitioner served eleven years in prison and was released in 2017.  (Farhane Aff. ¶ 44.)  In 2018, the Government filed a civil complaint to revoke Petitioner's naturalization on grounds that he procured his naturalization by fraud and concealment.  See United States v. Farhane, No. 18-CV-4347 (E.D.N.Y. Aug. 13, 2013), dkt. no. 1.

In response, Petitioner moved pursuant to 28 U.S.C. § 2255 to vacate his guilty plea, conviction, and sentence (the "Motion to Vacate"), arguing that his counsel provided constitutionally ineffective assistance by failing to warn him of the risks of denaturalization and deportation which could follow from his plea. (See dkt. no. 220 at 4-5.)

In support of his Motion to Vacate, Petitioner submitted an Affidavit which describes certain privileged communications between himself and Hueston.  (See Farhane Aff.)  For example, Petitioner stated that he told Mr. Hueston he wanted to go to trial and explained the priority he placed on a short separation from his family.  (See id. ¶¶ 28-29.)  Petitioner added that Mr. Hueston advised he might not receive a fair trial "because [he] was Muslim and did not speak English like a native speaker."  (Id. ¶ 28.)

On March 31, 2020, the Court denied Petitioner's Motion to Vacate, concluding Petitioner had failed to demonstrate that his attorney's actions were objectively unreasonable and that his denaturalization risk stemmed from his misrepresentations

regarding his criminal conduct rather than from his conviction. (Dkt. no. 254.)    The Court of Appeals initially affirmed the Court's decision, holding that denaturalization is not a direct consequence of pleading guilty and that the Sixth Amendment therefore imposes no obligation on attorneys to warn of that risk. See Farhane v. United States, 77 F.4th 123, 133 (2d Cir. 2023).

However, the Court of Appeals agreed to rehear the case en banc, and on October 31, 2024, a divided Court of Appeals reversed the panel decision.    The en banc decision held that defense attorneys are obligated to inquire about, and advise on, denaturalization and deportation consequences that naturalized citizen clients may face.    See Farhane v. United States, 121 F.4th 353, 363 (2d Cir. 2024) (en banc).    Accordingly, the Court of Appeals vacated and remanded the case for the Court to address the merits of Petitioner's claim under § 2255.    Id. at 376-77.    The Court of Appeals directed this Court to evaluate "whether Farhane's counsel's failure to advise was objectively reasonable" under the "prevailing professional norms in 2006."    Id. at 375.    To do so, the Court of Appeals instructed this Court to analyze ABA standards and similar materials and to provide Mr. Hueston an opportunity to be heard.    Id.    The Court is also required to address whether Petitioner was prejudiced by counsel's omission, allowing him a "robust opportunity to develop a relevant record" as well as the Government a chance to rebut.    Id. at 374-76.

On remand, the parties failed to reach an agreement as to the extent to which Petitioner waived attorney-client privilege by bringing his ineffective assistance claim, as the scope of this waiver affects the information that Petitioner's trial counsel will be compelled to disclose to the Government and the Court. Petitioner's Waiver Motion followed.  In connection with the Waiver Motion, the Court directed the parties to address (a) the subject matter that trial counsel will be required to disclose and (b) whether otherwise privileged documents related to Petitioner's petition must also be produced.  (Dkt. no. 288.)

## II.  **Legal Standard**

### A. 28 U.S.C. § 2255

In order to succeed on his § 2255 claim, Petitioner must show that his former "counsel's representation fell below an objective standard of reasonableness" and that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 687-688, 694 (1984).

In the context of pleas, Strickland's prejudice prong does not interrogate the ultimate outcome of proceedings, but whether there was a "denial of the entire judicial proceeding . . . to which [Petitioner] had a right."  Roe v. Flores-Ortega, 528 U.S. 470, 483 (2000).  The prejudice prong is fulfilled if the defendant "would not have pleaded guilty and would have insisted on going to

trial" in the absence of his attorney's objectively unreasonable conduct.  Hill v. Lockhart, 474 U.S. 52, 59 (1985).

### B. Waiver of Attorney-Client Privilege

Attorney client privilege is "one of the oldest recognized privileges for confidential communications" and is critical in supporting "full and frank communication between attorneys and their clients."  Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998).  This privilege is generally waived, however, when a "party relies on the privileged communication as a claim or defense or as an element of a claim or defense."  In re Cnty. of Erie, 546 F.3d 222, 228 (2d Cir. 2008).  In Erie, the Court of Appeals determined that mere relevance of privileged material to a claim or defense is insufficient to waive privilege.  Erie, 546 F.3d at 229 ("[P]rivileged information may be in some sense relevant in any lawsuit.  A mere indication of a claim or defense certainly is insufficient to place legal advice at issue.").  Instead, "a party must rely on privileged advice from his counsel to make his claim or defense."  Id.

District courts in this Circuit have applied Erie in criminal and habeas cases considering privilege waivers.  See United States v. Schulte, 2020 WL 133620, at *5 (S.D.N.Y. Jan. 13, 2020) ("There can be no dispute that [defendant]'s letters rely on advice of counsel for his defense."); United States v. Green, 2020 WL 6822986, at *4 (S.D.N.Y. Nov. 19, 2020) (holding petitioner waived

privilege as to his ineffective assistance of counsel claims "to

the extent that his arguments rely on advice from" trial counsel);

Aladino v. United States, 2011 WL 6131175, at *2 (E.D.N.Y. Dec. 8,

2011) (applying reliance standard under Erie to find implicit

waiver in habeas case).

Importantly, the scope of waiver must be "formulated with

caution" and be "no broader than needed to ensure fairness of the

proceedings." Erie, 546 F.3d at 228; United States v. Concepcion,

2020 WL 5646339, at *3 (S.D.N.Y. Sept. 21, 2020). Fairness

considerations arise when a party attempts to use the privilege as

both "a shield and a sword." In re Grand Jury Proceedings, 219

F.3d 175, 182 (2d Cir. 2000) (citing United States v. Bilzerian,

926 F.2d 1285, 1292 (2d Cir. 1991).) "[A] party cannot partially

disclose privileged communications or affirmatively rely on

privileged communications to support its claim or defense and then

shield the underlying communications from scrutiny by the opposing

party." Id. at 182. Put differently, the privilege-holder may

not selectively waive privilege to assert a fact to influence a

decisionmaker "while denying its adversary access to privileged

material potentially capable of rebutting [that] assertion." John

Doe Co. v. United States, 350 F.3d 299, 306 (2d Cir. 2003).

Fairness is decided "on a case-by-case basis, and depends primarily

on the specific context in which privilege is asserted." In re

Grand Jury, 219 F.3d at 183.

### III. **Discussion**

#### A. **Petitioner Has Relied on Privileged Communications to Establish Both Prongs of Strickland**

Petitioner argues that he has waived attorney-client privilege only as to "communications (or lack thereof) between him and trial counsel concerning the potential denaturalization or deportation consequences of his guilty plea." (Pet. Waiver Mem. at 5.) Following the Court of Appeals' remand to this Court to consider the merits of Petitioner's claim under § 2255, Petitioner intends to rely on such communications in an attempt to demonstrate that his former counsel's performance was deficient, the first prong required to establish ineffective assistance of counsel under Strickland. There is no dispute that Petitioner has waived attorney-client privilege as to these communications.

But Petitioner ignores that his Affidavit also described privileged communications to establish the prejudice prong of Strickland. For example, Petitioner states:

> I told Mr. Hueston I wanted to go to trial and I did not want to plead guilty. Mr. Hueston told me that it was not a good idea to go to trial. He told me that a jury might be more likely to convict me because I was Muslim and did not speak English like a native speaker.

(Farhane Aff. ¶ 28.) Petitioner also avers that he "told Mr. Hueston that [his] priority was to have the shortest separation from [his] family." (Id. ¶ 29.) These representations support Petitioner's prejudice argument—that he would not have pled guilty

8

and would have insisted on going to trial but for Mr. Hueston's failure to advise him of the deportation and denaturalization consequences of his plea.  Based on Petitioner's reliance on privileged communications to demonstrate he was prejudiced by his counsel's deficient performance, Petitioner has waived "privileged material potentially capable of rebutting" the assertion that Petitioner would not have pleaded guilty but for counsel's omission.  John Doe Co., 350 F.3d at 306.

### A. The Government Is Entitled to Waiver Over the Requested Subjects in Fairness

The Government argues that the scope of Petitioner's waiver should extend more broadly to six subjects that it claims either are directly relevant to the Strickland inquiry (Gov. Opp'n at 7) or are topics upon which Defendant relied in his Affidavit in support of his habeas petition.  (Id. at 8).  Specifically, the Government seeks to discover communications between Petitioner and his former counsel involving:

> (1) the defendant's naturalization, including whether the naturalization overlapped in time with the offense conduct, (2) the defendant's desire to live in the United States, (3) the nature and strength of the defendant's ties to Morocco or another foreign country, (4) the defendant's attitudes toward United States citizenship for himself or his family, (5) the perceived strength of the Government's evidence, including potential trial defenses, and (6) the defendant's goals and instructions to Mr. Hueston with respect to plea negotiations.

(Id. at 6-7.)   The Government argues that the first subject
bears on the performance prong of Strickland and the other five
subjects bear on the prejudice prong.   (Id. at 7.)

Information within each of these subjects may be "capable of
rebutting" the assertion that either i) counsel's performance was
deficient or ii) that Petitioner would have not pleaded guilty but
for counsel's omission, John Doe Co., 350 F.3d at 306, and it would
be unfair to deny Mr. Hueston the opportunity to address these
topics given Petitioner's reliance on them.   For example, given
Petitioner's claim that Mr. Hueston never advised him of the
denaturalization consequences of his plea, Mr. Hueston must be
afforded the opportunity to disclose what information Petitioner
provided counsel regarding his naturalization, including whether
the naturalization overlapped in time with the offense conduct.
As another illustration, in the Affidavit Petitioner states that
he "told Mr. Hueston that [he] wanted to go to trial and that [he]
did not want to plead guilty," (Farhane Aff. ¶ 28), and "would
have chosen to go to trial even if [he] faced more years in prison
as a result" (id. ¶ 42).   Fairness demands that Mr. Hueston be
permitted an opportunity to disclose communications regarding

Petitioner's goals and instructions to him with respect to plea negotiations.[3]

### B. Petitioner's Request for a Protective Order

Petitioner requests a protective order that limits the waiver of privilege to this proceeding, limits the use of communications disclosed by trial counsel to this proceeding, constrains the Government's access to such information, requires those communications to be filed under seal, and restricts who in the Government may participate in any re-prosecution of Petitioner or future immigration proceedings. (Pet. Waiver Mem. at 24.)

Federal courts may, for good cause, enter protective orders limiting the extent to which discovery may be disclosed and used. Fed. R. Civ. P. 26(c). In Bittaker v. Woodford, 331 F.3d 715, 717 (9th Cir. 2003), the Court of Appeals for the Ninth Circuit affirmed a district court's entry of a protective order barring the use of privileged material for "any purpose other than litigating the federal habeas claim" at hand. In the Ninth Circuit's view, fairness compels district courts to "enter appropriate orders clearly delineating the contours of" the privilege waiver such that "the party given such access does not

---

[3] Given Petitioner "readily avers that by filing his petition he has impliedly waived the privilege as to certain communications" (Pet. Waiver Reply at 8 n.6), Petitioner need not provide a consent form as to waiver.

11

disclose these materials, except to the extent necessary in the habeas proceeding." Id. 727-28.  The Ninth Circuit reasoned that:

> [i]f a prisoner is successful in persuading a federal court to grant the writ, the court should aim to restore him to the position he would have occupied, had the first trial been constitutionally error-free.  Giving the prosecution the advantage of obtaining the defense casefile—and possibly even forcing the first lawyer to testify against the client during the second trial—would assuredly not put the parties back at the same starting gate.

Id. at 722-23.

Other federal courts have found similar protective orders appropriate in these circumstances.  See Harris v. United States, No. 3:14-cr-00042-01, 2016 WL 236988, at *3 (S.D. W. Va. Jan. 19, 2016); United States v. Straker, 258 F.Supp.3d 151, 158-159 (D.D.C. 2017); Courtade v. United States, 243 F.Supp.3d 699, 705 (E.D. Va. 2017); see also Waters v. United States, 302 A.3d 522, 534 (D.C. 2023) (recognizing that "every court to have considered this issue seems to agree" with the Ninth Circuit's approach and precluding the Government from using the privileged information even for purposes of impeachment).

Here, Petitioner has waived privilege over a number of subjects, including his naturalization and whether it overlapped in time with the offense conduct (Farhane Aff. ¶ 15), his ties to Morocco or another foreign country (id. ¶ 18), and his attitudes toward U.S. citizenship (id. ¶¶ 14-18).  Because it is difficult to predict how such information may ultimately prove useful to the

Government or detrimental to Petitioner in a subsequent re-trial or immigration proceeding, the Court concludes that Petitioner is entitled to a protective order requiring the waived material to be filed under seal and limiting the use of the waived material to this proceeding.  Otherwise, to allow the prosecution to use the communications disclosed by counsel in this habeas proceeding in a subsequent proceeding would "give the prosecution a wholly gratuitous advantage."  Bittaker, 331 F.3d at 724.

Accordingly, communications disclosed by trial counsel shall be filed under seal, and the attorney-client privilege shall not be deemed automatically waived in any other Federal or State proceeding by virtue of the Court-ordered disclosure in this § 2255 proceeding.  The Government is prohibited from using the information disclosed by Petitioner's trial counsel without further order of a court of competent jurisdiction or a written waiver by Petitioner.

However, Petitioner's request to i) prohibit the Government from accessing or consulting any such materials in any other proceeding and ii) prohibit individuals participating for the Government in this proceeding from participating in or communicating about this matter with any individuals participating for the Government in any future proceedings is denied.  The Court sees no need to constrain the Government's ability to communicate amongst itself or restrict its ability to allocate and staff

13

Government attorneys, given the Government's inability to use the waived material in any future proceedings.

## IV.  Conclusion

For the reasons set forth above, Petitioner's Motion is GRANTED in part and DENIED in part.  It is hereby ordered that:

1. Petitioner has waived attorney-client privilege as to communications between him and trial counsel concerning:

   a. the potential denaturalization or deportation consequences of his guilty plea;

   b. Petitioner's naturalization, including whether the naturalization overlapped in time with the offense conduct;

   c. Petitioner's desire to live in the United States,

   d. the nature and strength of Petitioner's ties to Morocco or another foreign country;

   e. Petitioner's attitudes toward United States citizenship for himself or his family;

   f. the perceived strength of the Government's evidence, including potential trial defenses, and

   g. Petitioner's goals and instructions to Mr. Hueston with respect to plea negotiations.

2. Trial counsel shall give testimony about such communications (or lack thereof) and produce written communications between trial counsel and Petitioner concerning the above-mentioned topics;

3. Testimony given and written communications disclosed by trial counsel shall be filed under seal;

4. The attorney-client privilege shall not be deemed automatically waived in any other Federal or State proceeding by virtue of the Court-ordered disclosure in this § 2255 proceeding; and

5. The Government is prohibited from using the information disclosed by Petitioner's trial counsel without further order of a court of competent jurisdiction or a written waiver by Petitioner.

The parties shall submit a joint letter no later than October 31, 2025 advising the Court of how they propose to proceed.

The Clerk of the Court shall close docket number 289 on 05-CR-673 and docket number 44 on 18-CV-11973.

**SO ORDERED.**

Dated:    October 23, 2025
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge